IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| **SYLVESTER WADLEY**, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| **SOUTHEAST ROOFING** | ) | |
| **SOLUTIONS INC.** | ) | |
| | ) | |
| | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff, Mr. Sylvester Wadley, (hereinafter "Mr. Wadley" or "Plaintiff")

files this complaint against Defendants seeking redress of unlawful employment

discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964

and 42 U.S.C. § 1981.

## INTRODUCTION

Mr. Wadley, an African American male, was subject to a racially hostile

work environment when his supervisors repeatedly threatened him with a knife,

repeatedly called him racial epithets including the 'N word' and subjected him to

various other discriminatory experiences. The discriminatory working environment

caused Mr. Wadley frequent headaches, discomfort, post-traumatic stress, and compromised his physical safety and well-being.  After reporting the illegal discriminatory behavior, Defendant employer retaliated against Mr. Wadley by enforcing employment policies in a discriminatory fashion, then terminating his employment.

## PARTIES

1.

Mr. Sylvester Wadley is an adult African American man formerly employed as a Service Technician Apprentice for Southeast Roofing Solutions Inc.  At all times relevant to this action, Mr. Wadley has and continues to be a resident of the Southern District of Georgia.  Mr. Wadley submits to the jurisdiction of this Court.

2.

Southeast Roofing Solutions Inc. is a domestic corporation that provides commercial roofing and specialty metal services in the Southeast region.  At all times relevant to this action, employed more than 500 employees.  Accordingly, at all times pertinent to this action, Southeast Roofing Solutions Inc. was an 'employer' within the meaning of Title VII.

## JURISDICTION AND VENUE

3.

This action arises under laws of the United States, including Title VII of the Civil Rights Act of 1964, as amended, 42 USC § 2000e, et. Seq and 42 U.S.C. § 1981. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (a)(4).

4.

This Court has authority to award costs and attorneys' fees under 42 U.S.C. § 1988 and 29 U.S.C. §794(a).

5.

Venue is proper in the Southern District of Georgia pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2). Defendants have their official residence in the Southern District of Georgia, and a substantial part of the events and omissions giving rise to the claims in this action occurred in this district.

## ADMINISTRATIVE EXHAUSTION

6.

Mr. Wadley filed a charge with the Equal Employment Opportunity Commission on September 29, 2019.  Mr. Wadley received a Right to Sue Letter from the Commission on March 4, 2021.  Mr. Wadley exhausted his administrative remedies and files this action within the required 90 days.

## FACTS

### 7.

On or about October 16, 2018, Mr. Wadley began working for South East Roofing Solutions Inc. as a Service Technician Apprentice.

### 8.

As a Service Technician, Mr. Wadley was responsible for finding, fixing, and reporting leaks not initially identified among other roles.

### 9.

Mr. Larry Ward, a white male, is the Superintendent at South East Roofing Solutions Inc. As a corporate executive in upper management, Mr. Ward had decision-making managerial authority to direct and control job placement and policy and procedures for the Service Technicians and Service Technician Apprentices.

### 10.

Mr. Donnie, a white male, was a Supervisory Service Technician at South East Roofing Solutions Inc. Mr. Donnie is a middle management professional, who supervised lower-level management, service technicians, and service technician

apprentices as needed. Mr. Donnie supervised and directed Mr. Wadley's employment activities as needed.

11.

Mr. Jerry Basemor, a white male, was the Senior Service Technician at Southeast Roofing Solutions Inc. Mr. Basemor provided instruction and guidance to junior service technicians and service technician apprentices, including Mr. Wadley. Mr. Basemor evaluated Mr. Wadley's performance in 2019.

12.

Mr. Serron Terry, a black male, was a Supervisor and Senior Service Technician at Southeast Roofing Solutions Inc. Mr. Terry was responsible for training and supervising Mr. Wadley's work performance. Mr. Terry served as a direct, immediate supervisor for Mr. Wadley on various projects.

13.

Supervisor Sebastian, a Latino male, was a Supervisory Service Technician and team lead. Mr. Sebastian was responsible for training Mr. Wadley on appropriate protocols, supervising his completed work, and directing his daily work activities. Mr. Sebastian was Mr. Wadley's immediate supervisor on various projects.

14.

Mr. Todd, a white male, was Southeast's Safety Supervisor. Mr. Todd was responsible for ensuring that employees had access to safety supplies to ensure compliance with safety regulations and company policies.

15.

Between late 2018 to early 2019, Mr. Wadley received an early verbal performance review from Mr. Ward, who expressed that his performance was "very good."

16.

Mr. Wadley has always notified his supervisors of anticipated work absences and has no-call, no-shows in his personnel file.

17.

Mr. Wadley received no negative written disciplinary records or complaints throughout his tenure at Southeast.

18.

In late January 2019, Mr. Wadley was subjected to a series of discriminatory behaviors which caused a racially hostile work environment.

19.

Mr. Basemor was often verbally abusive to Mr. Wadley.

20.

In or about March 18, 2019, Mr. Basemor yelled and cursed at Mr. Wadley, as he demanded that Mr. Wadley climb a ladder with a 90-lb generator.

21.

Although Mr. Wadley recommended the hauling technique that complied with safety protocols, Mr. Basemor screamed, "Hell no. Go get the got damn generator."

22.

Mr. Basemor, Mr. Wadley's supervising technician, forced Mr. Wadley to disregard safety protocols and appropriate lifting methods of hauling a 90-lb generator up a two-story building.

23.

Mr. Terry witnessed the March 2019 abusive interaction.

24.

Mr. Basemor did not require non-black service technicians to disregard safety protocols nor speak to them in a condescending, disrespectful manner.

25.

A few months later, on or around June 5, 2019, Mr. Wadley was traumatized by racial discrimination when Mr. Sebastian grabbed his arm and put a razor knife on his skin in a threatening manner.

26.

When Mr. Sebastian grabbed Mr. Wadley's arm, Mr. Wadley asked him to stop, shaking his head back and forth in protest.

27.

Mr. Wadley feared for his safety and well-being because his direct supervisor made a direct threat against him.

28.

One of his supervisors, Mr. Donnie stood nearby, watching the scene unfold.

29.

Mr. Wadley looked to Mr. Donnie, a middle manager who had authority to discipline Mr. Sebastian, but Mr. Donnie took no action.

30.

Mr. Sebastian threatened Mr. Wadley with a razor blade at least 4-5 more times after the initial incident.

31.

Mr. Wadley continued to endure hostile treatment from Mr. Sebastian.  When in the sky lift cleaning putty from the windows, Mr. Sebastian would allow the putty to fall and hit Mr. Wadley on his face and body on multiple occasions.

32.

On one day in particular, Mr. Wadley recalls the putty fell and hit him across his face so hard that it knocked off his safety glasses.

33.

Again, Mr. Donnie witnessed said behavior but never reprimanded Mr. Sebastian as to the safety hazard or the racially discriminatory treatment.

34.

Mr. Sebastian did not treat other non-black service technicians or service technician apprentices in an abusive, disrespectful manner.

35.

Mr. Sebastian called Mr. Wadley a racial epithet, the "N word" 6-7 times per day for several weeks to demean and belittle him.  Sometimes when he wanted Mr. Wadley to do something, Mr. Sebastian would say "Hey Nigger."

36.

Mr. Sebastian would ask Mr. Wadley, "What do you get when a Nigger and a Chinese have a baby together?"

37.

Mr. Sebastian would ask Mr. Wadley, "What do you get when a Nigger and a Mexican have a baby?"

38.

The abusive discriminatory name calling impacted Mr. Wadley's ability to perform essential job functions because the nature of his position required direction and cooperative effort from his supervisors and colleagues—who made his job more difficult to complete by removing access to human capital, safety resources, and bodily safety on job sites.

39.

Because of the racially hostile work environment, Mr. Wadley isolated himself from his other co-workers to minimize abusive attacks.

40.

The discriminatory working environment lowered Mr. Wadley's self-esteem, led to frequent headaches, and fatigue.

41.

Although Mr. Donnie witnessed Mr. Sebastian's racially discriminatory taunting and abuse, he never said or did anything to stop the abuse.

42.

Mr. Wadley endured verbal abuse, a racially hostile work environment, and discrimination for eight months.

43.

From January 2019-August 2019, Mr. Wadley was emotionally, mentally, and psychologically tortured; he also experienced pain in his hips, knees, back and shoulders.

44.

The hostile behavior proceeded every day, multiple times per day—on an average 6-7 times per day.

45.

Mr. Wadley tried to appeal to reason, imploring Mr. Sebastian not to use the word because of its painful and derogatory history, but Mr. Sebastian continued to discriminate against him.

46.

In addition to persistent racial epithets, Mr. Sebastian would also taunt Mr. Wadley by hiding his lunch on multiple occasions.

47.

In early July 2019, Mr. Wadley requested replacement "guts" for his hard hat to ensure compliance with safety protocols.

48.

Supervisor Ricky was responsible for visiting the various sites, tracking job status, and providing safety equipment to crew members.

49.

Although Mr. Wadley asked Mr. Ricky and Mr. Larry multiple times to provide guts for his hard hat, Mr. Wadley was ignored for over a month.

50.

Without the interior framework to hold the hard hat in place, the hard hat could not stay on Mr. Wadley's head.

51.

 After refusing to provide Mr. Wadley with necessary safety equipment, Defendant, by and through their supervisors, discriminated against Mr. Wadley by noting a violation of the so-called "100% hard hat policy".

52.

Mr. Wadley recalls that white and Latinx male service technicians and service technician apprentices, working under the direction of Mr. Ricky and Mr. Larry, were not written up for violations of the hard hat policies in July 2019 despite repeated violations thereof.

53.

Mr. Wadley's employer singled him out only *after* he engaged in protected activity, namely reporting the racially hostile work environment.

54.

In July 2019, Mr. Wadley was reassigned to work with Arturo's crew.

55.

In his new assignment, Mr. Wadley reported to Supervisor Arturo.

56.

In his new assignment, Mr. Wadley's primary duty was to assist with replacing old roofs.

57.

Mr. Wadley was the only African American individual on the roofing crew.

58.

Mr. Wadley told Arturo about his racially discriminatory experience and the deleterious impacts it had on him, but Mr. Arturo was unsympathetic.

59.

Mr. Arturo then began calling Mr. Wadley the "N word," apparently in an effort to further traumatize him, make him feel isolated, and diminish his humanity.  When

Mr. Arturo called Mr. Wadley, he would say "hey my nigger" or "do this my nigger" or "do that my nigger".

60.

Overwhelmed by the incessant racial discrimination, Mr. Wadley reported the racially discriminatory hostile work environment in-person to Superintendent Brian and Safety Supervisor Todd in July 2019.

61.

Following his report, Mr. Wadley received no information about an investigation or corrective action, or remedial measures taken by either Mr. Brian or Mr. Todd.

62.

Mr. Wadley was reassigned to a roofing site, under the direction of Supervisor Juan Jr., a Latino male.

63.

Juan Jr. was Mr. Wadley's immediate supervisor.  He provided him with daily tasks and supervised the completion of assigned tasks.

64.

Mr. Carol Todd, a white male, was a service technician apprentice and Mr. Wadley's coworker who witnessed the verbal abuse that Mr. Wadley endured from Juan, Jr.

65.

Mr. Wadley witnessed Juan Jr. and Mr. Todd visibly intoxicated at a job site.

66.

Mr. Juan Jr. provided incorrect instruction to Mr. Wadley on the proper mesh size for the roofing job.

67.

Immediately, Mr. Wadley began working to correct the mesh error. The other members of the crew retreated to perform other tasks, leaving Mr. Wadley to complete the over-haul by himself.

68.

In retaliation for reporting the hostile work environment, Mr. Wadley's co-workers and supervisors left him alone to make corrections to a job designed to be completed by multiple workers.

69.

Mr. Wadley's coworkers and supervisors abandoned their roofing job duties—forcing Mr. Wadley to compromise his health and safety to complete the job alone.

70.

Subject to the hot summer Georgia sun for several hours without help from his colleagues, Mr. Wadley eventually fell subject to heat exhaustion.

71.

In recovery, Mr. Wadley was unable to work for a few days.

72.

Mr. Wadley called Mr. Ward to inform him about his anticipated absence, but he did not answer the phone.

73.

Mr. Wadley, wanting to make sure that Mr. Juan Jr. was abreast of his work schedule, sent him a text letting him know that he would not be able to work.

74.

Mr. Wadley also called Mr. Ricky and informed him about the discriminatory incident.

75.

Mr. Wadley's employer was aware of his intention to stay home and recover—by virtue of check-in calls from Mr. Todd who advised Mr. Wadley on methods to expedite his recovery.

76.

When Mr. Juan Jr. contacted Mr. Wadley via phone, he used abusive language, including multiple curse words e.g., "Fuck."

77.

Upon his return to work, Mr. Wadley was reassigned to a less desirable position.

78.

Mr. Wadley's new position required him to cut trees, trim limbs, and clean bushes from around a fence.

79.

Mr. Wadley's new tree position only lasted two weeks—offered fewer work hours, no option for overtime pay, and decreased job security.

80.

Just weeks after making a complaint of discrimination to upper management, on August 28, 2019, Mr. Todd terminated Mr. Wadley's employment for retaliatory reasons.

## COUNT I: EMPLOYMENT DISCRIMINATION IN CONTRAVENTION OF TITLE VII

81.

All of the foregoing allegations are repeated and realleged as though fully set forth herein.

82.

Defendant, by and through their supervisors, intentionally created and acquiesced in a racially hostile working environment with the repeated and pervasive use of racial epithets, racially offensive comments, racial threats, and creation of racial hierarchies among the staff.

83.

Defendant intentionally created and acquiesced in the racially discriminatory behavior and tangible employment actions of its supervisors when it failed to take any remedial action after receiving notice thereof.

84.

All a result of the unlawful actions of Defendant, Mr. Wadley has suffered loss of income, emotional pain, suffering, mental anguish, and other non-pecuniary losses.

85.

Based on all the facts incorporated to support this Count, Plaintiff has demonstrated that Defendant has violated Mr. Wadley's Title VII rights by subjecting him to a racially hostile working environment.

86.

Based on all the facts incorporated to support this Count, Plaintiff has presented a convincing mosaic of evidence from which a jury could infer discriminatory intent.

## COUNT II
## RETALITORY EMPLOYMENT DISCRIMINATION IN CONTRAVENTION OF TITLE VII
*(Against all Defendants in their individual and official capacities.)*

87.

All of the foregoing allegations are repeated and realleged as though fully set forth herein.

88.

Mr. Wadley engaged in protected oppositional activity when he confronted his supervisors about the use of racial epithets on multiple occasions, made a discrimination complaint to upper management, requested to work with another team, and filed a formal EEOC charge with the Commission.

89.

Defendant's retaliatory conduct, including a more hostile working environment, termination, a demotion, and non-feasance, following Mr. Wadley's complaints of a racially hostile working environment constitutes unlawful retaliation in violation of Title VII.

90.

After receiving notice of Mr. Wadley's protected oppositional activity, Defendant acted with intentionality, malice, and reckless indifference to Mr. Wadley's federally protected rights.

91.

Based on all the facts incorporated to support this Count, Plaintiff has demonstrated that Defendants violated Mr. Wadley's Title VII rights by subjecting him to retaliatory conduct that has a range of closely proximate protected activities occurring weeks prior.

## COUNT III
## RACIAL DISCRIMINATION IN CONTRAVENTION OF SECTION 1981
*(Against all Defendants in their individual and official capacities.)*

92.

All of the foregoing allegations are repeated and realleged as though fully set forth herein.

93.

Defendant intentionally created and acquiesced in the racially discriminatory behavior of its supervisors when it failed to take any remedial action after receiving notice thereof.

94.

Defendant denied Mr. Wadley the same right to make and enforce employment contracts, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, as described above and to be further proved at trial, because of his race, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

95.

As a result of the unlawful actions of Defendant, Mr. Wadley has suffered loss of income, emotional pain, suffering, mental anguish, and other non-pecuniary losses.

96.

Based on all the facts incorporated to support this Count, Plaintiff has demonstrated that Defendant has violated Mr. Wadley's Section 1981 rights by subjecting him to a racially hostile working environment.

## COUNT IV

## RETALITORY RACIAL DISCRIMINATION IN CONTRAVENTION OF SECTION 1981

97.

All of the foregoing allegations are repeated and realleged as though fully set forth herein.

98.

Defendant acted with intentionality, malice, and reckless indifference to Mr. Wadley's federally protected rights.  Defendant, acting under color of statute, ordinance, regulation, and with a policy, custom, or usage of allowing, abetting, and perpetrating racial discrimination, subjected Mr. Wadley, or caused him to be subjected, to the deprivation of rights, privileges, or immunities secured by the Civil Rights Act of 1866, 42 U.S.C. § 1981, by and through 42 U.S.C. § 1983.

99.

Defendant's racially discriminatory employment practices were a significant and determining factor in the decision of Defendant to subject Mr. Wadley to the described abusive retaliatory treatment.

100.

The reasons given for denial of Mr. Wadley's rights to make and enforce contracts, as described herein, including the reasons given for the abusive retaliatory treatment including policy enforcement and employment performance issues are pretextual for Defendant's discriminatory animus.

101.

Based on all the facts incorporated to support this Count, Plaintiff has demonstrated that Defendants violated Mr. Wadley's Section 1981 rights by subjecting him to retaliatory conduct that has a range of closely proximate protected activities occurring weeks prior.

## COUNT V

### ATTORNEY'S FEES
*(Against all Defendants.)*
102.

Based on the facts alleged in this Complaint, Plaintiff is entitled to attorney's fees against Defendant under 42 U.S.C. § 1988(b), 42 U.S.C. § 2000e-5(k), and all applicable laws.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court:

a) That process issue and service be had on each Defendant;

b) That a jury trial be had on all issues so triable;

c) That Plaintiff be awarded all costs and other expenses in an amount to be determined at trial, including attorney's fees;

d) That Plaintiff have judgment against Defendants for punitive damages;

e) That this Court grant compensatory and equitable relief to Plaintiff; and

f) That Plaintiff receives such other and further relief as this Court deems just and proper.

DATE: May 23, 2021

Respectfully submitted,

_____

Angelik Edmonds
Attorney for Mr. Sylvester Wadley
GA Bar: 650757
Edmonds Law Office of Civil Rights LLC
691 John Wesley Dobbs Avenue NE
Suite V-17 Atlanta, Georgia 30312
O: 678-404-1239
F: +1 678-623-9090
E: angie@aedmondslaw.com